Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

SOUTHERN District of MISSISSIPPI

*Southern* ~~GULFPORT~~ Division



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**MAR 11 2026**

ARTHUR JOHNSTON
BY_____ DEPUTY

Case No. ___1:26cv79 TBM-RPM___

*(to be filled in by the Clerk's Office)*

RICHARD W. ROSE

)
)
)

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

CITY OF GULFPORT, MS
FORMER MAYOR BILLY HEWES
CITY ATTORNEY JEFF BRUNI
CITY PROSECUTOR DUSTIN USELTON
JUDGE SEAN COURTNEY

)
)
)
)
)
)
)
)
)
)
)
)

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

Jury Trial: *(check one)*    ☒ Yes    ☐ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non–Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | RICHARD W. ROSE |
| Address | 12238 ROSE POINT |

| | | |
|---|---|---|
| GULFPORT | MS | 39503 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | HARRISON |
| Telephone Number | 228-297-1911 |
| E-Mail Address | ROSEPOINTRIVER@GMAIL.COM |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | BILLY HEWES |
| Job or Title *(if known)* | FORMER MAYOR |
| Address | 604 BEACH BLVD OR 11497 US 49 |

| | | |
|---|---|---|
| GULFPORT | MS | 39501 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | HARRISON |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☒ Individual capacity    ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | JEFF BRUNI |
| Job or Title *(if known)* | CITY ATTORNEY FOR CITY OF GULFPORT, MS |
| Address | 2218 15TH ST OR 4507 COURTHOUSE RD |

| | | |
|---|---|---|
| GULFPORT | MS | 39503 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | HARRISON |
| Telephone Number | 228-868-5811 |
| E-Mail Address *(if known)* | |

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

☒ Individual capacity    ☒ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | DUSTIN USELTON |
| Job or Title *(if known)* | FORMER CITY PROSECUTOR |
| Address | DA OFFICE 1801 23rd Ave OR 16830 Alcorn Ave. GPT |

| | | |
|---|---|---|
| GULFPORT | MS | 39503 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | HARRISON |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☒ Individual capacity    ☒ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | SEAN COURTNEY |
| Job or Title *(if known)* | CITY JUDGE |
| Address | 1451 Clubhouse Dr. |

| | | |
|---|---|---|
| WIGGINS | MS | 39577 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | STONE |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☒ Individual capacity    ☒ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

1st, 4th, 5th, 14th, of U.S. Constitution

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

NO

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

SEE ATTACHEMENT 1.

## III.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

GULFPORT MISSISSIPPI

B.    What date and approximate time did the events giving rise to your claim(s) occur?

DECEMBER 22, 2022 THROUGH OR ABOUT AUGUST 6, 2023

C.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

SEE ATTACHMENT 2

IV.    **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

As a result of the wrongful arrest and prosecution, I suffered the loss of my liberty, emotional distress, humiliation, damage to my reputation, and financial expenses defending myself. I was forced to endure the stress of criminal charges for a crime I did not commit, and my constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments were violated.

V.    **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

SEE ATTACHEMENT 3

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:         MARCH 11, 2026

Signature of Plaintiff

Printed Name of Plaintiff      RICHARD W. ROSE

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

Address _____

_____
            *City*              *State*        *Zip Code*

Telephone Number _____

E-mail Address _____

**ATTACHMENT 1**

**II. Basis for Jurisdiction**

**D.** Former Mayor Billy Hewes: All claims occurred while Hewes was Mayor of Gulfport, Mississippi where he was, on information and belief, the policy maker and/or approved the polices of the City of Gulfport.

City Attorney Jeffrey Bruni: All claims occurred while Bruni was City Attorney for Gulfport, Mississippi. Bruni was also a policy maker and oversaw the policies, duties and actions of the City of Gulfport Prosecutors in their actions in prosecuting criminal defendants in the Gulfport Municipal Court. Bruni approved the polices of the prosecutors of the City of Gulfport.

Former City Prosecutor Dustin Uselton: Uselton prosecuted Plaintiff and in so doing knowingly and intentionally failed to produce to Plaintiff 2 body camera videos made by 2 Gulfport police officers which contained evidence that was exculpatory as to Plaintiff. Uselton violated inter alia Rule 17.10 of the Mississippi Rules of Criminal Procedure.

Gulfport City Judge Sean Courtney: Judge Courtney violated Plaintiffs right to audio record his trial by telling Plaintiff that it was "illegal" to record the trial. Miss Code Ann. Section 9-13-32 provides the statutory authority for a defendant to record a municipal court trial. Plaintiffs' right to record the trial is also stated in Rule 1.10 Mississippi Rules of Criminal Procedure.

**ATTACHMENT 2**

**III. Statement of Claim**

**C. What are the facts underlying your claim(s)?**

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS
### Facts leading to arrest of Plaintiff

1.     Plaintiff would show from January 1, 2022, to or about 1:00 P.M. on June 1, 2022, Plaintiff owned two (2) cats, a solid gray cat, named Malibu, and a black, brown, white and orange Calico, named Birthday.

2.     Plaintiff would show on June 1, 2022, at about 1:00 P.M., Resh, Plaintiffs next-door neighbor and a forty-plus (40+) member of law enforcement, drove his Harrison County Patrol issued SUV and parked in front of Plaintiffs driveway gate.  Resh exited the SUV and called for Plaintiff to the gate whereupon he informed Plaintiff that Birthday, Plaintiffs white, brown, black and orange Calico cat was on his Harrison County Patrol SUV leaving muddy paw prints on his County Patrol SUV.  Resh identified Birthday as being the cat at that particular time for Birthday walked past Plaintiff Rose and Resh while the two men were speaking.

3.     Plaintiff would show that he did not know if what Affiant Resh said was true, but being a neighbor, Plaintiff told him he would take care of it.  Two days, later, on June 3, 2022, Plaintiff gave Birthday to a woman who lived about thirty-five (35) miles from Plaintiff's home on Highway 603 in Hancock County, Mississippi.

4.     Plaintiff would show after giving Birthday away on June 3, 2022, Plaintiff sent a text message to Neil Resh's wife informing her that Birthday was "gone". After giving Birthday away, Plaintiff owned but one cat, the gray one, Malibu, and he believed the matter to be over.

5.     Plaintiff would show Ten (10) weeks later on August 22, 2022, and unbeknownst to Plaintiff at that time, Neal Resh called the Gulfport Police Department (GPD) at approximately 4:20 PM complaining to the GPD dispatcher three (3) cats owned by Plaintiff were on his property that morning (August 22, 2022) between 8:00 AM and 8:30 AM.

2

6.  Plaintiff would show that Officer Tichenor was dispatched where an approximate thirty (30) minute discussion or interview with Affiant Resh ensued.  During those minutes, Affiant Resh scrolled through his cell phone showing and describing pictures of several cats to Officer Tichenor.

7.  Plaintiff would show that Affiant Resh stated clearly the cats shown and described in the pictures were owned by Plaintiff and they were on his property that morning, August 22, 2022, between 8 am and 8:30 am.  One of the pictures shown to Officer Tichenor was of Birthday, the Calico, which was impossible as Birthday was in Hancock County, Mississippi on August 22, 2022.

8.  Plaintiff would show by the communication between Affiant Resh and Officer Tichenor, it most certainly appears/appeared that by Officer Tichenor's comments, he believed everything Affiant Resh said and/or communicated to Officer Tichenor was taken as true by Officer Tichenor, most likely because Affiant Resh was a forty (40) plus year law enforcement officer and member.  Further, during the discussion/interview Affiant Resh made several derogatory and slander per se statements about Plaintiff to Defendant Officer Tichenor, statements that would make most anyone think the worst of another person, but here it was the Plaintiff, and not one of the statements were true.

9.  Plaintiff would show Officer Tichenor completed his interview with Affiant Resh, but he failed to walk approximately 150 feet to Plaintiff's residence to speak with Plaintiff about the cat complaint reported by Affiant Resh. Further.  Plaintiff would show that though police officers normally 'investigate' a crime, the actions of Officer Tichenor were more in line of a thirty (30) minute discussion with Affiant Resh.

10. Plaintiff would show that unbeknownst to him at the time, on August 23, 2022, Affiant Resh delivered an ex- parte letter about his cat complaint against Plaintiff Rose to all Gulfport Municipal Court judges.  In that letter Affiant Resh explained to the Judges about the cats and requested the judges to call him if there were any questions about the cat at large complaint/case.  Affiant Resh also included his private cell phone number in the ex parte letter.

11. Plaintiff would show on information and belief that none of the Gulfport Municipal Judges entered a recusal after receiving the *ex parte* letter from Affiant, Affiant Resh, and one of the judges, Judge Kirk Clark, later on October 6, 2022 signed the Warrant to arrest Plaintiff.

12.     Plaintiff would show that on or about September 2, 2022, Affiant Resh signed an Affidavit, but it was later changed pursuant to an order from City Chief Prosecutor, Dawn Strough. The description of the cat was changed as Neal Resh "signed against the first two cats (white cat with brown and black spots) and (white cat with brown, orange, and black spots)". On information and belief, those were the first and second affidavits signed by Affiant Resh, who also signed an Affidavit for the third cat (white cat with black spots).

13.     Plaintiff would show that it is apparent that the third (3rd) Affidavit executed by Affiant Resh occurred on September 26, 2022, whereupon Affiant Resh stated on his Oath that Plaintiff allowed a "white cat with black spots" TO RUN AT LARGE BY BEING ON THE PREMISES [of Affiant] INCLUDING YARD AND APPURTENANCES AT 10264 RIVER ROAD DR." and it was on the property of Affiant Resh in the morning hours of August -22, 2022, in violation of the Gulfport ordinance 7-96, a misdemeanor with a fine upon conviction.

14.     Plaintiff would show that the allegations against him were not known to him until he received certain documents via a production request he made on December 12, 2022.

15.     Plaintiff would show that it was not until May 15, 2023, and after he appealed the guilty decision of Defendant Courtney, he was able to learn of and/or discover that Judge Kirk Clark signed the Warrant for his arrest on October 6, 2022 after being given notice of the ex-parte letter written and delivered to all City Municipal Judges on August 23, 2022. Plaintiff would further show it is unknown at this time if Judge Clark, having knowledge of the ex-parte letter, should have signed the Warrant, but if Judge Clark had seen/read the ex-parte letter, he should have recused himself from any legal action in the case. The arrest warrant indicated that Plaintiff had violated the Cat at Large Ordinance of the City of Gulfport.

16.     Plaintiff would show on information and belief that all City Municipal Judges were given or were privy to the ex parte letter written and delivered to the City on August 23, 2022, yet none of the judges recused themselves until January 25, 2023, the day after Plaintiffs arraignment on January 24, 2023.

17.     Plaintiff would show that from on or about August 2022 to December 2022, no one with the Defendant City contacted Plaintiff Rose about the cat at large charge for which he was to be arrested by the City.

4

18.  Plaintiff would show On December 6, 2022, Plaintiff was arrested for Cat at Large by GPD Officer Kevin Jefferson.

19.  Plaintiff would show Affiant Resh knew Plaintiff had given Birthday away as Plaintiff texted Neil Reshs' wife on June 3, 2022, informing her that Birthday was gone.

20.  Plaintiff would show on December 12, 2022, Plaintiff, *pro se*, filed a Motion for Production for Evidence to discover what evidence the City had against him including a specific request for "any and all video or audio recordings or any exculpatory evidence", there might be to aid in his defense. Plaintiff Rose sought discoverable information since he knew that the cat described in the Affidavit was not his.

21.  Plaintiff would show the City, by and through Defendant Prosecutor Uselton, responding to the Motion for Production of Evidence on December 22, 2022, producing a packet of documents including:

> a) December 6, 2022, arrest report,
> b) the Warrant,
> c) an approval review form,
> d) the Affidavit upon which Plaintiff was arrested,
> e) the Case Report Detail,
> f) two pictures of alleged boat damage, and
> g) Defendant History

22.  Plaintiff would show that in the packet of documents referred to in 21 above, neither Defendant City nor Defendant Prosecutor Uselton produced even one (1) picture of a 'white cat with black spots', and further, there was not produced any type or kind of audio or video recordings or exculpatory evidence. Plaintiff would show that MRCrP 17.10 mandates that discovery be supplemented as information became available, but the stated rule provides **no mandate to supplement** documents that had not or were not produced to a criminal defendant.

23.  Plaintiff would show that after reading the Affidavit and Warrant he knew immediately that he was innocent for he did not own and had never owned a "white cat with black spots". Knowing he was innocent, Plaintiff did not retain legal counsel as he was certain that justice would be done.

24.  Plaintiff would show that also included in the production of documents from the City, Paragraph 21 above, there was an "approval review form" stating the stating the "the

affidavit needs correction?" and "Changed wording on affidavit." The Affidavit upon which Plaintiff had been arrested, as a document produced by the City, Chief Prosecutor Strough showed there had been a change, which on information and belief, was authorized by "DLS", meaning Ms. Strough, the Chief Prosecutor for The City. The change made is unknown to Plaintiff, and Defendant City has failed to produce the original affidavit executed by Affiant Resh.

25.    Plaintiff would show that the City "approval review form", the 3rd document listed in Paragraph 21, above, inferred there was another affidavit; that the first and/or the 'original' affidavit was changed, altered or modified. That affidavit was not provided by Defendants City or Uselton and likewise, any "body camera video footage" that may be in the possession of Defendant City and/or Defendant Uselton was not produced as requested in the Motion for Production of Evidence. <u>Plaintiff Rose affirmatively states he was entitled to all discoverable information and documentation including any affidavits of Resh that would be evidence in his case and trial and used by Plaintiff to prove his innocence.</u>

26.    Plaintiff would show he was arraigned on January 24, 2023, wherein he plead "Not guilty, it wasn't my cat".

27.    Plaintiff would show he later learned that on January 25, 2023, five (5) months and two (2) days *after* Neal Resh, the Affiant, delivered the unethical and improper *ex parte* letter to the Municipal Court judges which disclosed to said judges the allegations he had made against Plaintiff, an Order of Recusal was entered and Wiggins, Mississippi attorney Sean Courtney, here, Defendant Courtney, was appointed Municipal Judge *Pro Tempore* to hear Plaintiffs' case.

28.    Plaintiff would show on January 24, 2023 it had been over thirty (30) days since Plaintiff had received the packet of documents produced by Defendants City and Uselton on December 22, 2022, and over that time Plaintiff was continuously trying to piece together how he could have been arrested for a white cat with black spots when he did not own and had never owned a cat of that description and based on the production of documents received by Plaintiff, there was no evidence connecting him in any way to the white cat with black spots.

29.    Plaintiff would show up to January 24, 2023, only the items stated in Paragraph 21 above, had been produced by Defendant City and Defendant Prosecutor Uselton. When Plaintiff

was arrested on December 6, 2022, he noticed that Officer Jefferson was wearing a body camera. Further, because Plaintiff had been a member of the Gulfport City Council for fifteen (15) years he knew well of Defendant City's body camera policy, i.e., Plaintiff knew that Defendant City had policy that all police officers must wear a body camera each and every time an officer spoke to someone. Plaintiff also knew he had not been provided with a witness list, and most importantly, Plaintiff had not been provided a picture of the cat described in the Affidavit.

30.  Plaintiff would show he spoke to an attorney friend whereupon Plaintiff was advised to review Mississippi Rules of Criminal Procedure Rule 17.10 (hereinafter "MRCrP") where he learned Defendants City and Uselton was mandated to produce certain items if they were specifically requested by a defendant. Plaintiff further learned that a prosecutor had a continuing duty to supplement any disclosure previously produced, but there was no rule requiring a prosecutor such as Defendant Uselton, to supplement anything that he had not produced pursuant to MRCrP 17.10.

31.  Plaintiff would show that save and except what he was given in response to the Motion to Produce Evidence filed December 12, 2022, Defendants City and Uselton failed to respond to any of Plaintiffs' other Motions. Further, as the trial date was approaching and Defendant Uselton having failed to respond to the Motions, to protect his rights, Plaintiff filed a Plaintiff would show that a Motion for Continuance on March 3, 2023 on the ground(s) that Defendant Uselton had not responded to or complied with the Motions to Compel, but like all the other motions filed, Defendant Uselton again failed to respond.

32.  Plaintiff would show that as to the 'evidence' against him which was provided in the packet of documents produced by Defendant Uselton on December 22, 2022, it did not include even one picture of a "white cat with black spots", the cat for which Plaintiff was arrested. Plaintiff would further show that factually, there was not a scintilla of evidence that tied him to that cat which neither provided probable cause for Plaintiffs' arrest nor gave Defendant Uselton the factual evidence to prosecute Plaintiff, unless the wheels of justice were knowingly and intentionally perverted to violate Plaintiffs' rights.

33.  Plaintiff would show MRCrP Rule 17.10 is not ambiguous. It states that when a written request is made prior to trial, the prosecuting attorney (here, Defendant Uselton) **shall produce** (emphasis added) the certain documents and things requested to the defense.

The particular sub-paragraphs of Rule 17.10 that are applicable to Plaintiffs Gulfport Municipal Court case are stated below with Plaintiffs comments in parentheses:

  1) produce a list of the names of all witnesses expected to testify for the Prosecution - (No witness list was produced prior to the March 9, 2023, trial);

  3) provide defendants' criminal history - (This was produced prior to trial);

  5) provide "photographs, electronic data, to be offered in evidence" - (Only 2 pictures were produced prior to trial, and neither were of the white cat with black spots described in the Affidavit or of Birthday, the Calico, that was in Hanock County, Mississippi on August 22, 2022, and could not have been on the property of Neal Resh on that date)

  6) a copy of any exculpatory material concerning the defendant - (No exculpatory material was produced between December 22, 2022, and the trial date, March 9, 2023);

Plaintiff would further show the last sentence of Rule 17.10 states, "The prosecutor has a continuing duty to supplement any disclosure previously furnished".

34.    Plaintiff would show in the packet of documents produced by Defendant Uselton produced on December 22, 2022, the witness list was not included, and Plaintiff was not provided "any and all video or audio recordings or any exculpatory evidence", if any existed, which was requested in the Motion for Production of Evidence filed on December 12, 2022.

35.    Plaintiff would show that the failure to produce documents was not a mistake by Defendant Uselton. It was an intentional omission and, thus, a violation of Plaintiffs due process rights. Defendant Uselton knew exculpatory evidence existed in the videos taken by the two Gulfport officers, and further, Defendant Uselton knew, by reviewing the camera footage of Defendant Officer Tichenor, there was not one word between Affiant Resh and Defendant Tichenor of a white cat with black spots during the entire thirty (30) or so minutes of Defendant Tichenor's' interview of Neal Resh which is the reason for which Defendant Uselton intentionally failed to produce or turn over the body camera videos to Plaintiff which violated Plaintiffs rights.

**Defendant Courtney Appointed Judge Pro Temp for Trial**

36.    Plaintiff would show on May 15, 2023 (after the trial and Plaintiff appealed) it was learned that Affiant Resh had delivered an ex parte letter about his cat complaint to all City Judges on August 23, 2022, the day after he called in the complaint. The ex parte

letter was an unethical tactic by Affiant Resh to use his law enforcement background to influence the City judges, Affiant Resh was so confident in his relationship with the judges, he stated in the ex parte letter to the City Judges, "If you have any questions concerning this event you may call me at 228-697-1663".

37.   Plaintiff would show Defendant Courtney would preside over the trial and one of the first items for Plaintiff was the motions he had filed and the request for continuance inasmuch as he had not received full discovery from the City and Defendant Uselton.

38.   Plaintiff would show he was a *Pro Se* defendant in the Gulfport Municipal Court trial but was secure in his innocence and further, believed in the rule of law and that justice would provide a non-biased trial where evidence rules would apply, witnesses would be honest, and the judge would be fair and impartial in accordance with the Gulfport Municipal Courts' Mission Statement*:*

> *"To provide justice with professionalism and integrity by providing equal access and efficient adjudication of all matters brought before the court".*

Plaintiff would show that is not what happened.

**Defendant Courtney Wrongfully Denies Plaintiff Right to Record Trial**

39.   Plaintiff would show Defendant City's Municipal Court is not a court of record and would show that he intended to record the trial whereupon he purchased a recording device the day before the trial, March 8, 2023.

40.   Plaintiff would show he purchased a recording device and when bringing the matter of recording the trial to Defendant Courtney on the trial date, March 9, 2023, Defendant Courtney stated Plaintiff could not record the trial; that it was "illegal in Mississippi to record".

41.   Plaintiff would show that in Mississippi it is legal to allow a criminal defendant to record a Municipal Court trial when there is no court reporter.

42.   Plaintiff would show his statutory right to record the trial was violated by Defendant Courtney, his act being memorialized and corroborated in an Affidavit by a witness subpoenaed by the prosecution for the trial. Defendant Courtney lied to Plaintiff Rose in open court and knowingly and intentionally violated Plaintiff's statutory right to a fair and impartial trial and due process. and there could only be one plausible reason: no recording... no evidence of malfeasance. Plaintiff Rose seeks an injunction prohibiting

9

this unequal treatment and the violation of his right to record the trial.

43. Plaintiff Rose is seeking this Court to enjoin Defendant Courtney from engaging in denying other criminal defendants their statutory right to record their municipal court trial. Defendant Courtney should be ordered and directed to comply with Mississippi law so as to not deny a misdemeanor criminal defendant his/her right to audio record their respective trial to memorialize what occurred.

44. Plaintiff would show that he seeks prospective injunctive relief due to the intentional action of Defendant Courtney to prevent Judge from illegally denying the right to record the trial in violation of Mississippi law.

45. Plaintiff would show that Defendant Uselton, an officer of the Court, knew that the failure to allow the recording of trial was contrary to Mississippi law, but Plaintiff would show he stood mute and did nothing to bring the legality of recording the trial to the attention of the court, Defendant Courtney.

46. Plaintiff would show that his statutory right to record violated; he turned Defendant Courtneys' attention to the several pre-trial motions that he had filed. Plaintiff advised Defendant Courtney that he was not ready for trial because he had not received discovery information that he had requested via the Motion for Production of Evidence and the Motions to Compel. Despite Plaintiffs' plea, every motion was summarily and quickly denied without Plaintiff being able to state his support for his motions.

47. Plaintiff would show that he then brought to Defendant Courtneys' attention the Motion for Continuance and filed on March 3, 2023, requesting to continue the case until Defendant Uselton produced the documents which were requested by Plaintiff, such as the witness list as well as the documents requested in the Motions to Compel. Further, Plaintiff would show that like the other motions, the Motion to Continuance was summarily denied, Defendant Courtney stated to Plaintiff, "I have denied your motion, move on".

48. Plaintiff would show that he realized then a 'trial on the merits' was not going to happen and the Gulfport Municipal Courts "Mission Statement" to provide "… justice, professionalism, and integrity… " would not be afforded him as Plaintiff was directly confronted with an unjust system driven by bias and malice squarely aimed at convicting him regardless of the fact Affiant Resh had charged him with a crime which made the reason for Plaintiffs being denied his right to record the trial more obvious.

## The Cat at Large Trial

49.    Plaintiff would show that no picture of the white cat with black stripes was produced or entered in evidence and further there was no testimony about the cat described in the Affidavit. Plaintiff testified that on August 22, 2022 he owned one (1) cat, a gray one named Malibu.

50.    Defendant Uselton stated to the court that the color of the cat made no difference; it only mattered that Plaintiff owned a cat.

51.    Plaintiff would show that he asked Defendant Courtney to dismiss the case with prejudice or find him not guilty whereupon Defendant Courtney stated defiantly that he had been a judge for 18 years and that he had signed off on many affidavits and that it didn't matter what was written in the affidavit and he ended by stating clearly, "*things change*", whereupon he found Plaintiff guilty.

52.    Plaintiff would show that his Constitutional rights of due process was violated by both Defendant Courtney and Defendant Uselton for the various violations shown above; that the trial was unjust in the furthering of denying Plaintiff due process by Defendant Courtney and Defendant Uselton and further on information and belief, Defendant Courtneys' denying Plaintiffs statutory right to record the trial was to prevent recorded evidence of both Defendant Uselton and Judge Courtney intentionally violating Plaintiffs rights.

## Plaintiff Appeals to Harrison County Court

53.    Plaintiff would show he filed a Motion for Production of Evidence in Gulfport Municipal Court on December 12, 2022, wherein he requested, "… any and all video and audio recording" and "any and all exculpatory evidence", but no such evidence was produced as Plaintiff noticed that GPD Officer Kevin Jefferson was wearing his body camera when Plaintiff was arrested on December 6, 2022, and further, Plaintiff a Gulfport City Councilman for over 15 years, knew the City policy as to its officers wearing their body cameras which was the officers were required to wear the body cameras each and every time they existed their patrol vehicle to speak with someone.

54.    Plaintiff would show that he appealed the guilty decision whereupon he filed two (2) motions, the first on May 1, 2023; the second on July 7, 2023,both to in the Harrison County Court a motion to prevent spoliation any and all of Defendant City's documents

11

and pictures regardless to whether those were introduced into evidence at the Municipal Court trial.

55.   Plaintiff would show the first motion was set for hearing on May 15, 2023. Plaintiff appeared before Harrison County Court Judge Emily Baker (hereinafter "Judge Baker"), still as a *Pro Se* Defendant.  Judge Baker allowed Plaintiff to look through and copy whatever was in the "… complete file from the City Court" that had been delivered to the County Court for the de novo trial.

56.   Plaintiff would show that in the 'complete' City file, he found the ex parte letter written by Neal Resh and Defendant City's witness list for the March 9, 2023 municipal trial which he had requested in his December 12, 2022, Motion, but which was never produced by Defendant Uselton in violation of MRCr Rule 17.10.  The names of the police officers were not on the witness list.  Further, there was neither a reference to or about, nor any hard copies of any "body camera videos" in the 'complete' file from the City Court.

57.   Plaintiff would show that because he knew of the Gulfport policy regarding body cameras and because of what he had experienced with Defendant Useltons' 'tactics' during the City municipal trial, he would make a request to Judge Baker about the body camera videos.

58.   Plaintiff would show regarding the amended second motion to prevent spoliation which was set for hearing on July 11, 2023, Plaintiff fully intended to ask about body camera videos, but at the last-minute decided not to because Defendant Uselton was not trustworthy and if there were body camera videos, if Plaintiff were to request them in the second motion, Defendant Uselton may or could conveniently 'lose them'.  Further, Plaintiff had not noticed that he had left Number 3e. hanging until after entering Judge Bakers' courtroom on motion day, July 11, 2023.  While reviewing the second motion Plaintiff noticed the hanging Number 3e. and decided to bring the issue to the Courts' attention as he wrote 'Body cam' on his copy of the Second Motion.

**The Critical July 11, 2023, Motion Hearing Before Judge Baker**

59.   Plaintiff would show that after a discussion regarding what had occurred in the Municipal Court pre-trial regarding the motions Plaintiff filed that were ignored by Defendant Uselton, Plaintiff brought to the attention of Judge Baker he did not own a white cat with

black spots which was the cat described in the Affidavit and on August 22, 2022, Plaintiff only owned one cat, a gray cat named Malibu.  Plaintiff confirmed to Judge Baker that her Honor was correct, whereupon Plaintiff again, stated he never owned a white cat with black spots.

**Defendant Uselton has Truth Problem During July 11, 2023, Motion Hearing**

60.    Plaintiff would show during the July 11, 2023, hearing Judge Baker and Defendant Uselton had conversations about what Defendant Uselton "turned over" to Plaintiff for the coming County Court trial.  Following are several verbal exchanges between them concerning what Defendant Uselton 'turned over' to Plaintiff.

> **Judge Baker to Defendant Uselton:**
> *"So, my second question to Mr. Uselton is, are there any other documents or papers that would touch on this general motion for spoliation or to save all the evidence?"*
>
> **Defendant Uselton replied to the Court:**
> *"Not that I'm aware of, Your Honor.  **Our policy is to turn over our entire file, and my understanding is that happened.**"*
>
> **(Exhibit A**, Transcript of July 11, 2023, hearing, page 13, lines 22-25, page 14, lines 1-8) **(Emphasis added).**

Plaintiff would show that Defendant Uselton response to Judge Baker in Number 106 was not true as his office may well have a policy to turn over the entire file, but that did not happen in the municipal City case and it did had not happened after the appeal, and Uselton knew it, as the body camera videos had not been produced to Plaintiff.

> **Defendant Uselton then stated to Judge Baker:**
>
> *"... and **everything that I plan on using at trial or is in my file has been provided to the defendant.**"* **(Emphasis added).**
>
> **Exhibit A**, Transcript of July 11, 2023, hearing, page 14, lines 22-25)

Plaintiff would show in the statement immediately above, Defendant Uselton again has a truth problem as "... **everything** that... is **in my [his] file has** [had not] **been provided to the defendant [Plaintiff]**" is simply not true for Defendant Uselton maintained his very own 'prosecutor file' that was separate and apart from the 'complete City file' that

was transferred to the Harrison County Court for the de novo hearing. Defendant Useltons' personal prosecutor file.

61.  Plaintiff would show that **Judge Baker again asked Mr. Uselton:**

> "*Okay. Have you given Mr. Rose everything in your file?*

> **Defendant Uselton replied:**
> **"*Yes, Your Honor.***

> (Exhibit A, Transcript of July 11, 2023, hearing, page 15, lines 13 – 15)

Plaintiff would show Defendant Uselton's reply here, "Yes, Your Honor", was said without hesitation, but it, too, was not true.

62.  Plaintiff would show as the July 11, 2023, hearing was nearing an end, the body camera issue was brought up by the Plaintiff which led to this discussion:

> **Judge Baker:** ▨
> "*... and so if there are any pictures or any documents that either side wants to produce or provide at our upcoming trial, they will need to be fresh copies. We can't take from the old file to produce for this new trial. So we need you to make sure that you have copies of all of your documents ready to go, too, okay.*"

> **Plaintiff responded to Judge Baker:**
> "*And then the last item regarding this, actually I didn't include it in this, I apologize, ... was that **the Gulfport Police Officer who met with the affiant on August 22nd and the officer who had spoken to the affiant August 6th and who made the arrest of on that day of August 6th for the alleged crime of cat at large were each wearing body cameras.** And I requested in previous motions... to have all pictures, audio, video related to the case going back to original motion in early December after I was arrested... and I have not been provided any audio or video from each of these officers body cameras... because they may include exculpatory evidence. **And I know the City of Gulfport maintains body camera footage for a long time**". (Emphasis added)*

> (**Exhibit A**, Transcript of July 11, 2023, page 27 line 24 through page 28 line 20)

63.  Following the above statement Plaintiff Rose made to Judge Baker, her conversation(s) with Defendant Uselton regarding body cameras began:

> **Judge Baker to Mr. Uselton:**

*"Mr. Uselton, does the City of Gulfport retain body camera footage?"*

**Defendant Uselton replied**:
*"Judge, I am not sure of the policies… **I have some CDs in my file** that may be the body cam, and it could have been a missed communication with his request and did not specifically state body cam.*

**Defendant Uselton continued**:
**"The City certainly has nothing to hide. I'll review these CDs. If that's what it is we'll certainly provided it to the defendant. Again, Judge, it's open discovery and I'm happy to provide him anything that's in my file".**

(**Exhibit A**, page 29, lines 8 – 25)
(**Emphasis added**)

64. Plaintiff would show that regarding Paragraph 63 above, his statement to Judge Baker that he was "… not sure of the policies…" regarding body camera videos is stunning as Defendant Uselton was the Assistant City Attorney in 2026 and had been with the City prosecutor's office since at least 2019. Defendant Uselton was not candid with Judge Baker, as the body camera policies were well known. Further, Plaintiff would show that Defendant Uselton continued to make statements that were suspect if not total untruths. Judge Baker used the terminology "body camera footage"; Defendant Uselton responded that he has *"some CDs in my file that may be the body cam…"*. Defendant Uselton then went further, saying, *and it could have been miscommunication with his* [Plaintiffs] *request and did not specifically state body cam"*.

65. Plaintiff would show on information and belief, there was no miscommunication as Plaintiffs discovery request was unambiguous. Plaintiff was clear as he requested, "… all audio and video recording…" which is synonymous with body camera video or body cam. Defendant Uselton had kept the body camera CD's hidden and/or secreted in his personal prosecution file. In Defendant Uselton's second statement in Paragraph 63 above, he stated to Judge Baker:

**"I'll review these CDs**. *If that's what it is we'll certainly provide it to the defendant. **Again, Judge, it's open discovery and I'm happy to provide him anything that's in my file"**. (**Emphasis added**)

Plaintiff would show on information and belief, Defendant Uselton's above statement was not true and only made by him to 'cover' his being caught with the body camera

15

videos as Uselton had not need to review the two CDs in his file, he was trying to diffuse the issue; wanting the Court to believe he was a forthright, upstanding and honest lawyer/prosecutor as he boldly stated to Judge Baker, the City "has nothing to hide" and he, Defendant Uselton, is "happy to provide [the Plaintiff] anything… in [his] file". Plaintiff would show that at the time of the March 9, 2023 trial, Defendant Uselton had been in possession of the body camera videos for 77 days, from December 22, 2022 to March 9, 2023, and from the day of the City trial to the July 11, 2023 hearing another 94 days had passed and Uselton had still not produced the videos. Defendant Uselton did not tell Judge Baker the truth.

**Judge Baker then asked Mr. Uselton:**
*"Mr. Uselton, in addition reviewing the CDs you have, would you send an email or make a phone call to make an inquiry to see if there are any still saved under the server or the system that might still pertain. I doubt that there are at this point, but would you make that attempt?"*

**Defendant Uselton replied:**
*"Yes, Your Honor. And I will look into that myself, as well as have the Gulfport Police Department officer in charge of the system do a search. He's a little bit better than I am.* **Don't want anything to slide through the cracks and not be provided."**

**(Exhibit A**, page 30, lines 1thru 14)

Plaintiff would show in the exchange immediately above, on information and belief, Defendant Uselton was continuing the 'cover up' his violation of Plaintiff's right to exculpatory evidence; feigning to want to get to the bottom of the body camera issue, but Uselton's efforts fail as he knew that nothing or "anything" had slid "through the cracks", and moreover, there was absolutely no need for Defendant Uselton to "look into" anything because, though he said he had "some CDs in [his] file that may be the body cam…" he knew exactly what they were. He was telling not-truths to Judge Baker with a straight face.

### Plaintiff Identifies Body Camera CD's in Defendant Uselton's File

66.  Plaintiff would show that as Uselton was speaking with Judge Baker, he was standing at the defendant table and was in the right place, at the right time, and at the right angle that provided Plaintiff with a clear view of Defendant Uselton's open personal prosecution

file that was lying on his council table, right in front of him where Plaintiff was fortunate to see two (2) CDs.   Plaintiff will show he stated to Judge Baker,

> **"Mr. Uselton has the CDs here which I was not provided.** *Is there a way that he could just have them copied by somebody here? (Emphasis added)*

(Exhibit A, page 31, lines 20 -23)

The Court said no but the lies of Defendant Uselton was exposed, there were body camera videos that he did not produce pursuant to Mississippi law and Rule 17.10.

67.   That due to Plaintiffs bringing up the probability of body camera videos to Judge Baker and making an issue of the videos, the hearing took a decidedly different turn whereupon Defendant Uselton looked away from Plaintiff, slowly closed his file, and stated to Judge Baker with a straight face that he wanted to…

> "… make sure that [he does] everything the Court wants me to do" and he could "inquire" as to whether the videos were "in the system".

(Exhibit A, page 31, line 25; page 32, lines 1 – 15)

68.   Plaintiff would show on information and belief Defendant Uselton knew the videos were "in the system" as they were in his personal prosecution file, right there on the prosecutors' desk, right in front of him and the fact they were there provides substantive evidence that proves he was/ had been intentionally hiding and/or secreting the CDs'; not producing them in violation of Rule 17.10 and in violation of Plaintiffs right to due process.

69.   Plaintiff will show that on March 9, 2023, at the Municipal trial, Defendant Uselton had withheld the production of exculpatory evidence, the body camera footage and neither Gulfport Police Officer Darin Tichenor who investigated the cat complaint of Affiant Resh of the GPD officers who took the bodycam footage testified during the Municipal trial on March 9, 2023, the two officers were not even in the courtroom and on information and belief, the officers were not present to testify for the City for fear the the officers may mention their bodycam videos.

70.   Plaintiff will show the body camera video and audio of August 22, 2022, established that Officer Tichnor held a thirty (30) minute meeting/interview with Affiant Resh and that

during that conversation, Resh made several false and slander per se statements about Plaintiff Rose to Defendant Officer Tichenor. The body camera video also substantiates that during the time Affiant Resh and Officer Tichenor were meeting, there was absolutely no mention, description or pictures of a "white cat with black spots" being on his property at the time in question.

71.   Plaintiff would show that the August 22, 2022, body camera provided exculpatory evidence as to the Affidavit upon which Plaintiff was arrested as there was no mention or picture of a cat o f that description on the video.

72.   The December 6, 2022, body camera video of GPD Off icer Kevin Jefferson provided further exculpatory evidence as there was no mention of pictures of the white cat with black spots. Further Plaintiff would show that on December 6, 2022, and during a conversation Affiant Resh was having with GPD Officer Jefferson and two other GPD officers, a white cat with black and gray stripes walked by, whereupon at that moment, about fourteen (14) weeks after Affiant Resh had called in the cat complaint on August 22, 2022, he identified the aforementioned and completely different cat when he exclaimed to the GPD officers, including Officer Jefferson, "That's the cat that did it." Plaintiff would show that he did not own the 'newly identified cat'.

73.   Plaintiff would show the two videos reveal that Affiant Resh was/is a loose cannon, a person who despised Plaintiff Rose and had been making unwarranted accusations and lies to others about Plaintiff, but because Resh was a 'member of law enforcement' everything he said was taken as true by the Defendants without professional investigation.

74.   Plaintiff would show on information and belief that Defendant Uselton reviewed the body camera videos prior to Plaintiffs arrest on December 6, 2022 and notwithstanding the exculpatory nature of Officer Tichenor's video, … at some point after reviewing the CDs and knowing they would provide exculpatory evidence as a solid defense to the charge against Plaintiff, Defendant Uselton made a determination on behalf of the City to hide/secrete the videos in violation of Plaintiffs rights.

75.   Plaintiff would show on information and belief, that Defendant Uselton upon viewing the two body camera videos (CD's), he made a prosecutorial decision to not have the two officers testify for fear they would mention the videos either during direct testimony or

on cross-examination.

### Cat at Large Case Ends

76. On March 12, 2024, with the evidence now "staring in the face" of the City and based upon the totality of the circumstances, the charge against Plaintiff Rose for violating the "Cat at Large" City ordinance was dismissed with prejudice. Defendant Uselton, being caught with the body camera videos and having to produce them, knowing there was no 'white cat with 'black spots'; knowing there was no picture of a 'white cat with black spots'; and knowing that he could no longer violate Plaintiffs' rights, filed to Nolle Prosequi the case, stating in the motion:

> "After a complete review of all **facts and circumstances** surrounding the alleged offenses, the interests of justice do not warrant the further prosecution of this case." (Emphasis added)

77. Plaintiff would show regarding the Entry to Nolle Prosequi, Defendant Uselton knew the "facts and circumstances" from the beginning as he had the body camera videos that provided exculpatory evidence that proved Plaintiffs innocence. From September 2022 to March 2024, the false criminal charge against Plaintiff Rose was pending against him. From the beginning Uselton and the other Defendants knew there was no white cat with black spots.   From the beginning there was no cat owned by Plaintiff Rose on the property of Affiant Resh.   All named Defendants herein and Judge Sean Courtney, knew that Plaintiff Rose was wrongly and unlawfully being charged as a result of the bias and prejudice of Affiant Resh and covered up the truth to convict Plaintiff Rose.

78. The Defendants named herein violated Plaintiffs right to record the trial and his right to receive all discovery in possession of the prosection per Rule 17.10 for which he now sues. The ignored the facts from the body camera videos proved the cat at large charge was false but nonetheless, charges were filed and ***encouraged by the City***, and ***supported by the City*** to prosecute Plaintiff Rose.

**ATTACHMENT 3**

**V. Relief**

1. Award Plaintiff Rose $800,000.00 for his actual and compensatory damages to which he is entitled for injury, damage, and loss suffered as a result of Defendant Uselton's violation of 42 U.S.C. Sections 1983 and his violation of Rule 17.10 of the Mississippi Rules of Civil Procedure.

2. Award Plaintiff Rose all costs and attorney's fees, if any, pursuant to the relevant provisions of 42 U.S.C. 1983 and 42 U.S.C. Section 1988.

3. Grant a permanent injunction enjoining Defendant Sean Courtney from telling defendants that it is illegal to record the proceedings in a municipal court trial.

4. Grant a permanent injunction enjoining Defendant Dustin Uselton form engaging in the secreting and/or hiding of exculpatory evidence in violation of Mississippi law.

5. Award a judgment against the City of Gulfport, Mississippi.

6. Award separate judgments against Defendant Billy Hewes in his official and individual capacity for his violation of federal and state law.

7. Award a judgment against Defendant Jeffery Bruni in his official and individual capacity for his violation of federal and state law.

8. Award a judgment against Defendant Dustin Uselton for his violation of federal and state law.

9. Award a judgment against Defendant Sean Courtney for his violation of federal and state law.

10. Award a judgment for Plaintiffs incurred legal costs of $12,500.00;

11. Award a judgment for Plaintiffs other costs including but not limited to transcripts, copies, travel and hotel (for trips to Jackson to meet with attorney) of approximately $5,000.00;

12. Award Plaintiff Rose all such other ad further relief as may be necessary and proper and to which he is otherwise entitled pursuant to the provisions of 42 U.S.C. 1983; ad Plaintiff Rose also seeks any and all other appropriate relief as he may be entitled under the claims brought here in his Complaint filed in this action.