1

```
 1      IN THE COUNTY COURT OF HARRISON COUNTY, MISSISSIPPI
                    FIRST JUDICIAL DISTRICT
 2

 3   CITY OF GULFPORT                              PLAINTIFF

 4   VERSUS                        CAUSE NO.: E2401-2023-7

 5   RICHARD W. ROSE                              DEFENDANT

 6

 7   *******************************************************

 8   PROCEEDINGS HELD BEFORE THE HONORABLE ALISON BAKER,

 9   COUNTY COURT JUDGE, IN THE ABOVE NUMBERED AND STYLED

10   CAUSE OF ACTION, ON JULY 11, 2023.

11   *******************************************************

12

13   APPEARANCES:

14       Present and Representing Plaintiff:

15       DUSTIN USELTON, ESQUIRE
         Office of City Prosecutor
16       City of Gulfport, Mississippi
         P.O. Box 1780
17       Gulfport, Mississippi  39502

18       Present and Appearing Pro Se:

19       MR. RICHARD ROSE
         12238 Rose Point
20       Gulfport, Mississippi  39503

21

22

23                    REPORTED BY:

24            NATASHA W. PERKINS, CSR
              Official Court Reporter
25                 P.O. Box 998
           Gulfport, Mississippi  39502-0998
```

            Natasha Perkins, CSR, Official Court Reporter



EXHIBIT A

**PROCEEDINGS**

1

2          THE COURT:  Please be seated.  Our first

3    case on the docket this morning is City of

4    Gulfport versus Richard Rose, in Cause Number

5    E2401-23-7.

6          Mr. Rose, you're here, you're present?

7          MR. ROSE:  Yes, ma'am.

8          THE COURT:  Okay.  You can come on up to

9    counsel's table.

10          MR. ROSE:  All right.

11          THE COURT:  Good morning.  And for the

12   City?

13          MR. USELTON:  Good morning, Your Honor.

14   Dustin Uselton for the City.

15          THE COURT:  Good morning, Mr. Uselton,

16   how are you?

17          MR. USELTON:  Good.  And yourself,

18   Judge?

19          THE COURT:  Good.  All right.  We are

20   here today for motions.  These motions were

21   previously set I believe on May the 31st, and

22   then moved to today.  The trial of this

23   matter is currently set for August the 2nd,

24   and Mr. Rose has filed two motions now for

25          discovery and to prevent the spoliation of

1     evidence.

2          MR. ROSE:  Yes, ma'am.  And some things

3     to talk about, if that's what you --

4          THE COURT:  Okay.  So what we're going

5     to do at this point is, since I don't see any

6     motions from the City -- Mr. Uselton, have

7     you filed any?

8          MR. USELTON:  I have not at this time,

9     Judge.  Depending on what happens today, the

10    City may have one and I'll go over that with

11    Mr. Rose and try to avoid taking any more of

12    the Court's time.

13         THE COURT:  Okay.  Well, Mr. Rose, since

14    these are your motions, I'm going to let you

15    go first, if you would like to step up to the

16    podium.  It's at this time that I'm going to

17    place you under oath.

18         MR. ROSE:  Yes, ma'am.

19         THE COURT:  If you'll raise your right

20    hand.

21         (Oath administered.)

22         THE COURT:  Okay.  Mr. Rose, I have

23    looked at your initial motion, and then it

24    appears that on the 7th you filed a second

25    motion to prevent spoliation of evidence,

4

1    maintain and produce some documents.  So

2    let's touch on those first.

3        MR. ROSE:  Well, the first one, I've

4    written some notes here regarding the first

5    motion, which concerned the affidavit, number

6    one.  In my original discovery request, I had

7    a motion to produce evidence and I was

8    provided a copy -- I hope you can hear me

9    okay.  I have a little sinus problem.

10        THE COURT:  You're good.

11        MR. ROSE:  I was provided a copy of the

12    City Of Gulfport -- from the City of Gulfport

13    court department, approval of review form

14    that states that the affidavit needs

15    correction.  I have a copy of that, if you

16    need one, or you may have that attached to

17    the back of that, Your Honor.

18        THE COURT:  Let me see if it's attached

19    to the back of the motion.

20        MR. ROSE:  Yes, ma'am.

21        THE COURT:  I do not see it attached to

22    the back of the motion.

23        MR. ROSE:  I have one right here.

24        THE COURT:  All right.  I'm looking at

25    what you have handed to the bailiff.  It

1    says, approval review, police clerk entry

2    into warrant database.  It says, the affiant

3    is Neil Resh.  The defendant is Richard Rose,

4    and then there's the date sent, September 2,

5    '22, and then there's a note where a

6    prosecutor or judge can have a comment.  It

7    says, affidavit needs correction, question

8    mark.  So this does not appear to be the

9    affidavit.

10         MR. ROSE:  No, ma'am.  Well, just below

11    that, it says under notes, under the dotted

12    line, it says, change wording on affidavit

13    and it was signed by somebody.  But that --

14    the affidavit, there was a first affidavit,

15    so the affidavit needed correction, so

16    someone changed the affidavit because it

17    said, change wording on affidavit, so I

18    believe I am entitled to that first

19    affidavit.  The City did not provide that

20    affidavit, for whatever reason.

21         THE COURT:  Do you have a copy of the

22    affidavit itself?

23         MR. ROSE:  The one that was signed?

24         THE COURT:  Yes.

25         MR. ROSE:  Yes, ma'am.  I think I have

1    it in here.

2         THE COURT:  Mr. Uselton, do you happen

3    to have one?

4         MR. ROSE:  You know, Your Honor, I don't

5    have that affidavit that was signed by

6    Mr. Resh with me.  It's in the file back at

7    the house.

8         MR. USELTON:  I do, Your Honor.

9         THE COURT:  Will you hand that to the

10   bailiff.  I'll make sure that you get your

11   copy back.  The only thing that I can see

12   from the Municipal Court file --

13        MR. USELTON:  And, Your Honor, I'll show

14   this to Mr. Rose, but I'm going to hand you,

15   we colloquially will call this a warrant pack

16   in the City of Gulfport.  It has the cover

17   sheet, similar to what you have.  It has the

18   affidavit signed by Mr. Resh, and then also

19   the warrant that was signed by the judge, so

20   those three pieces of paper typically are

21   together with the City.

22        THE COURT:  Mr. Rose, have you seen

23   those before?

24        MR. ROSE:  I saw the first two items in

25   the initial discovery.  The third one I did

1  not get until the Court gave that to me to

2  review when I was here in June.  When the

3  bailiff handed me the packet, I was able to

4  have somebody make copies.

5  THE COURT:  Okay.  So the first sheet of

6  this three-page packet Mr. Uselton handed me

7  does include the review page, which you also

8  handed me.  The second page is an affidavit

9  signed by Neil Resh dated September 26, which

10  I will note was marked as an exhibit in the

11  Municipal Court case, or trial, it does have

12  an exhibit sticker on there.  And then the

13  third sheet is actually the warrant dated

14  October 6 of '22, and it just merely states

15  the charge is cat at large.  So it really

16  doesn't have any additional information.

17  So that being the case, the affidavit

18  itself is Page 2.  It was a part of the

19  Municipal Court file, and your contention,

20  Mr. Rose, is that this is not the only

21  affidavit, that there was one before this?

22  MR. ROSE:  Yes, ma'am, that is, and also

23  Mr. Resh, the affiant, testified in the City

24  Court on cross-examination when I asked about

25  the affidavit, he said he had signed three

1  affidavits, which came to my surprise,

2  because he has been in law enforcement for 47

3  years, since January of 1976, so he is well

4  aware of when he signs an affidavit.  So I

5  was surprised that there was a third

6  affidavit that he had signed in this case.

7       THE COURT:  Mr. Rose, have you sent any

8  discovery requests to Mr. Uselton or the City

9  asking for other affidavits?

10      MR. ROSE:  Yes, ma'am.  Going back as

11  far as early January or maybe late December.

12      THE COURT:  And what was their response?

13      MR. ROSE:  I had no response, ma'am.

14      THE COURT:  How did you send those

15  discovery requests?

16      MR. ROSE:  I took them to the court

17  clerk's office and had them stamp file it,

18  and then they give that information to the

19  prosecutor's office.

20      THE COURT:  So you had it in writing?

21      MR. ROSE:  Yes, ma'am.  I don't have it

22  with me.  I'm sorry.

23      THE COURT:  That's okay.  Was it like in

24  a letter form?

25      MR. ROSE:  Well, the document that I

took in the motions, I had an issue -- I made
several motions that I filed, there was not a
letter attached, it was the motion, which
usually I think was like a two-page, I
dropped off at the court clerk's office
there, the court department.

THE COURT:  I do see a copy in the
Municipal Court file of a motion to compel
production of first affidavit, or the
complainant's first affidavit, and that was
stamped and filed on February 24th.

Mr. Uselton, can you tell me, do you
have any other affidavits?

MR. USELTON:  Your Honor, I am not in
possession of any other affidavits.  And just
to make the Court aware, that motion that
Your Honor is looking at was heard by the
trial court and they denied the motion after
argument by both parties, and so that would
be why there was no -- there was no written
response by the City, but the motion was
heard and oral argument was made.

THE COURT:  And then, of course, no
further inquiry once the Court denied the
motion.

1　　　　MR. USELTON:  That's correct, Your

2　　Honor.

3　　　　MR. ROSE:  And that inquiry didn't last

4　　long.  The judge took it up at the time of

5　　trial and denied it, you know, almost

6　　immediately.

7　　　　THE COURT:  Well, Mr. Rose, let me ask

8　　you, it's a fairly simple case.  The charge

9　　is cat --

10　　　　MR. ROSE:  Yes, it is.

11　　　　THE COURT:  Listen to me.  The charge is

12　　cat at charge.  So the allegation is that you

13　　have cats, they're your domesticated pets and

14　　they're not staying on your property, or you

15　　are keeping them in your yard and in your

16　　house.  It's that simple.  So what could

17　　possibly be in a first or second affidavit

18　　that you think would be more telling than the

19　　one you've been supplied?

20　　　　MR. ROSE:  Well, that's just it, Your

21　　Honor, I don't know, because the cat that

22　　Mr. Resh testified to, and is in the

23　　affidavit, which is a white cat with black

24　　spots, I've never owned a white -- a black

25　　cat with white spots.  The only cat that I

1    owned at the time on August 22nd was a gray

2    cat, which I've had for 16 years and has

3    since passed unfortunately.

4         THE COURT:  So it goes to the

5    description of the cat.

6         MR. ROSE:  Yeah.

7         THE COURT:  Because in this affidavit,

8    it says a white cat with black spots.

9         MR. ROSE:  And I've never owned a white

10   cat with black spots.  And the cat, the

11   pictures that the City put on of three

12   pictures of a calico cat that were testified

13   to by Mr. Resh and his son, they were taken,

14   they testified to, that those pictures were

15   taken on August 22, and that's impossible as

16   I gave that cat away on June 3, two days

17   after Mr. Resh met me at my gate and said,

18   hey, the cat, that calico cat named Birthday,

19   is getting on his county vehicle, putting mud

20   prints.  I have a sworn statement from the

21   individual in Hancock County that I gave the

22   cat away on June 3rd, I've even got text

23   messages --

24        MR. USELTON:  Judge, I would object.

25   This doesn't have anything to do with the

1   motion --

2        MR. ROSE:  I'm sorry.  I apologize, Your

3   Honor.

4        MR. USELTON:  -- that we're trying the

5   case right now.

6        MR. ROSE:  I'm sorry.

7        THE COURT:  You cannot talk at the same

8   time, and if you're going to address the

9   Court, I'm going to need you to stand.

10        MR. ROSE:  I apologize, Your Honor.  I'm

11   sorry.

12        THE COURT:  That's okay.  Just a minute.

13        (Brief interruption.)

14        THE COURT:  So, Mr. Rose, you're okay.

15   You don't need to apologize.  We just want to

16   make sure my court reporter stays happy.

17        Okay.  So what my understanding of your

18   last statements, Mr. Rose, are these are all

19   things that you're going to be able to bring

20   forward at trial.  These are questions that

21   you ask witnesses, these are arguments you

22   can make at trial, but as to the weight and

23   the necessity of another affidavit, that was

24   denied in your previous case.  This is a new

25   case.  It is a de novo review.  We're

1  starting over.

2      I am going to deny your motion.  I think

3  that the affidavit is merely the charging

4  instrument in this case.  And if you have a

5  basis to attack this affidavit, that might

6  actually work to your benefit at trial.  I

7  really don't -- I understand your argument

8  and I don't see the need for a fishing

9  expedition at this point to draw up potential

10  other affidavits.

11      MR. ROSE:  Or even a third one, but,

12  okay.

13      THE COURT:  I mean, it is what it is.

14  We all understand the charges, and I think at

15  trial you'll be able to present your argument

16  as to what cats you owned or didn't own and

17  the timeline for that, yes.

18      MR. ROSE:  Yes, ma'am.

19      THE COURT:  So, Mr. Uselton, I'm

20  going -- don't let me forget, I'm going to

21  give this packet back to you.

22      MR. USELTON:  Yes, Your Honor.

23      THE COURT:  And, Mr. Rose, I'm going to

24  give you your sheet back, as well, so we can

25  make sure you have those.

1    So my second question to Mr. Uselton is,

2    are there any other documents or papers that

3    would touch on this general motion for

4    spoliation or to save all the evidence?

5    MR. USELTON:  Not that I'm aware of,

6    Your Honor.  Our policy is to turn over our

7    entire file, and my understanding is that

8    that happened.  The only thing that I can

9    glean from the motion is the day of trial the

10   affiant handed me a package of documents.

11   And to me, this seems to be a neighbor

12   dispute and it had everything related to

13   these two individuals.  I fished through it.

14   There were some pictures that I was told were

15   from that day.  I don't believe those were

16   provided to Mr. Rose prior to that day.  They

17   were given to him prior to trial, but the

18   other documents were returned to Mr. Resh and

19   he -- Mr. Rose seems to want the City to

20   produce those documents, but I don't have

21   them in my possession and they're not

22   relevant to this proceeding and everything

23   that I plan on using at trial or is in my

24   file has been provided to the defendant.

25   THE COURT:  So it sounds like because

15

1    they're neighbors, did Mr. Resh, the claimant

2    in this case, did he have documents

3    pertaining to other complaints that neighbors

4    might have?

5         MR. USELTON:  Yes, Judge, as well as

6    letters that Mr. Rose had provided to

7    Mr. Resh's employer alleging some type of

8    misconduct and just lots of other incidents

9    that don't have anything to do with cats or

10   criminal charges or anything else, and that's

11   why those documents were returned to Mr. Resh

12   and were not kept in my file.

13        THE COURT:  Okay.  Have you given

14   Mr. Rose everything in your file?

15        MR. USELTON:  Yes, Your Honor.

16        THE COURT:  And, again, all of those

17   things are what pertains to the charge that

18   we're actually here for and not any other

19   type of bad blood or situation between

20   neighbors?

21        MR. USELTON:  Yes, Your Honor.

22        THE COURT:  Okay.  Thank you.

23        So, Mr. Rose, does that satisfy you?

24   Does that answer your question?  You have

25   everything in the City's possession

1       pertaining to this case?

2              MR. ROSE:  Well, that goes to then the

3       second motion, Your Honor, a part of the

4       second motion that I filed July 7th.

5              THE COURT:  Okay.  I do have a copy of

6       that.

7              MR. ROSE:  Do you want me to go ahead?

8              THE COURT:  Yes, go ahead.

9              MR. ROSE:  Yes, ma'am.  Thank you.  So

10      in one of these documents that I have

11      received during the last time I was here, I

12      was able to go through the Court file, if you

13      will, that was sent over from the City, was

14      that the affiant, what was included was a

15      letter, which I assume you might have, an

16      Exhibit A, a letter dated August 23rd, 2022,

17      to the residing city judge from the affiant,

18      which is Neil Resh.

19             THE COURT:  And this is Exhibit A

20      attached to your second motion?

21             MR. ROSE:  Yes, ma'am.

22             THE COURT:  Okay.  I'm looking at that.

23             MR. ROSE:  Do you need to read it first

24      or --

25             THE COURT:  No.  I've read it.  It's

dated August 23rd, 2022 and he talks about
some photos.

MR. ROSE: Right. Well, number one,
there's a couple of things in this that I
would like to take up. The affiant sent the
letter to the judge presiding in City Court
the day after he called Gulfport Police about
the cat at large. I believe the affiant's
actions were unethical, because you're are
not supposed to communicate with the judge.

Well, in my defense, I believe I'm
entitled to know which judges received the
letter, and further, that Sean Courtney, who
ultimately presided over the city trial
received the letter. And it's well known
that the affiant, he's a well-known law
enforcement officer of 47 years and I feel
like I need to know if he had contact with
the judges, and I believe I'm entitled to
either the cell phone records of the judges
and the affiant between August 23, 2022 and
the date of the trial, which is March 9th,
2023. I need to learn if the affiant had
contact with judges, or at least have
Mr Resh's cell phone records provided to me

1   with the numbers of the judges to know

2   whether he received or made calls to those

3   judges.

4           THE COURT:  Mr. Rose, I am sure that the

5   City Of Gulfport court system has in place

6   the same procedures and rules that our

7   Chancery Court, Circuit Courts and County

8   Courts have, and that is any mail that is

9   sent to a judge is sent to the clerk's office

10  and it is filed in the court case.  Judges do

11  not read ex parte communication sent by any

12  party.

13          MR. ROSE:  Well, I just want to make

14  sure that that was done, Your Honor.

15          THE COURT:  So I would ask,

16  Mr. Uselton -- and this letter that's

17  attached, it's stamp filed with the Municipal

18  Court seal showing that it was filed in the

19  court file.  In other words, the clerk's

20  office and court system is affirming we have

21  nothing to hide, we received this, we are

22  going to document we received it, it just

23  goes in the file.

24          MR. ROSE:  But, Your Honor, actually I

25  did not receive this.

```
 1          THE COURT:  I understand.  Mr. Uselton.
 2          MR. USELTON:  And, Your Honor, on top of
 3     that, the judges recused, which is why our
 4     conflict judge, Judge Courtney, from Wiggins
 5     came down to hear the case, because Judge
 6     Walker and Judge Clark, this letter was sent,
 7     and for whatever reason, I don't want to
 8     speculate as to why, but the judges recused
 9     after this letter was received and --
10          THE COURT:  To take extra precautions?
11          MR. USELTON:  Your Honor, that would be
12     my guess, Your Honor.  I just don't want to
13     speculate.  But Judge Courtney doesn't have
14     an office in our courtroom.  He doesn't have
15     a mailbox in our courtroom.  He shows up,
16     puts his robe on, walks in, hears his cases
17     and leaves.  So I don't believe that a
18     fishing expedition of judges' cell phone
19     records is appropriate here.  Our judges
20     recused just to -- you know, again, I would
21     argue just to avoid even the appearance of
22     impropriety and a conflict judge was
23     appointed to this case and ultimately heard
24     it.
25          THE COURT:  Thank you.  Mr. Rose, any
```

1    response to that?

2    MR. ROSE:  Well, I want to make sure --

3    I've been in local government for a long

4    time, and I know that you just don't

5    communicate.  But with Mr. Resh, you know,

6    having the same knowledge of not

7    communicating with the judge as I do, I just

8    want to confirm that they didn't, and so the

9    only way I can confirm is to have even an

10   independent party look at Mr. Resh's cell

11   phone record to see if any of those go to any

12   of the judges, especially the presiding

13   judge, Mr. Courtney.

14   THE COURT:  And you understand that

15   Judge Courtney, as Mr. Uselton has explained,

16   is not a judge that is permanently stationed

17   at the City Of Gulfport?

18   MR. ROSE:  I understand that, yes,

19   ma'am.

20   THE COURT:  So tell me how it would be

21   anything other than a fishing expedition when

22   all we have is a letter that is filed with

23   City Court to bridge the gap all the way to

24   cell phone communication.  What basis do you

25   have that there was any ex parte

Natasha Perkins, CSR, Official Court Reporter

communication to a judge by phone?

MR. ROSE:  Well, the only thing I can go back and relate to is the trial itself.  The judge refused to allow me to record the trial, which I am entitled to record under Statute 9-13-32, I know you know all this, and Mississippi Rules of Criminal Procedure Rule 1.10 that would have allowed me to provide -- to record the audio of the trial. He told me, Judge Courtney told me right off the bat, you're not allowed to record this trial.  It's against the law.  And it is not against the law.  My rights were violated at that very moment.  Otherwise I would have --

THE COURT:  Okay.  So what does the recording of the trial have to do with telephone communication or conversation before trial?

MR. ROSE:  I think it was just the way the Judge handled the case and refused to even allow me a continuance based upon not getting all the information and all the denials.  I just feel like that it was a -- the fix was in when I walked in the door. So, I mean, that's all I can say, Your Honor.

Natasha Perkins, CSR, Official Court Reporter

1    THE COURT:  Being that there is no other

2    evidence and it is purely speculation at this

3    point that there was any type of improper

4    communication by phone to this presiding

5    judge, Judge Courtney, as the other two

6    permanent City Court judges did recuse

7    themselves, I'm going to deny your motion to

8    produce any type of phone records.

9    MR. ROSE:  Yes, ma'am.

10    THE COURT:  Again, you have all of the

11    evidence.  I'm sure you have some evidence

12    you're going to present when we go to trial

13    in this case, and the rules apply the same to

14    both parties.  There is no secrets.  In other

15    words, anything you want to talk about,

16    anything that's relevant, anything that's

17    going to be introduced into trial, each party

18    has to give the other side copies.

19    MR. ROSE:  Yes, ma'am.  The next item

20    was that the affiant in this letter

21    referenced another case number.  And I just

22    don't know what the case number is.  Mr. --

23    sorry, I can't pronounce your last name.

24    THE COURT:  It's Mr. Uselton.

25    MR. USELTON:  You're correct, Your

1    Honor.  To be candid with the Court, I have

2    not seen or received a motion that was filed

3    last week, so I am kind of playing this by

4    ear.  But the letter, Judge, just to walk the

5    Court kind of -- and for the defendant's

6    education, when the first affidavit was

7    filed, that process is between the affiant

8    and the judges.  The prosecutor's office is

9    not involved.

10       So if the judges reviewed the warrant

11   pack and had additional questions before they

12   approved or denied the warrant, it would be a

13   separate hearing where the affiant can show

14   up and explain to the judge, how did you know

15   it was this person or answer any questions

16   that the judge has when making that probable

17   cause determination.

18       When the judge -- again, I was not

19   present, but told Mr. Resh you need some

20   additional information or the affidavit needs

21   to be changed, whatever, before I will

22   approve this, that would have gone under a

23   separate case file.  So maybe Mr. Resh is

24   referencing the case file for the affidavit

25   that was denied without prejudice and then

1    refiled under a different case number, which

2    is the one that we're here on today.

3        So again, I'm not sure what that first

4    case has anything to do with what we're here

5    on and the case number that we're here on and

6    the affidavit that we're here on, and we keep

7    going back to something that he's not charged

8    under and that has no bearing on this case,

9    but that's the only explanation I have about

10   a different case number, is that the first

11   affidavit that the prosecutor's office had

12   nothing do with would have been under a

13   separate case number.

14        MR. ROSE:  And that's fine.  I just was

15   curious what it was because I had no clue.

16        THE COURT:  And, Mr. Uselton, we're

17   making copies of the two motions that

18   Mr. Rose filed on the 7th so that you'll have

19   copies of those.

20        MR. USELTON:  Thank you, Your Honor.

21        THE COURT:  All right.  So I'm going

22   to --

23        MR. ROSE:  They can give it to me or

24   not.  However -- I mean.

25        THE COURT:  Again, it's something that

25

1    you're not charged with.

2    MR. ROSE:  Right.  That's okay.  I

3    didn't know what it was.  That's all.  And so

4    we can just move on from there.

5    THE COURT:  Mr. Rose, have you attempted

6    to go to City Court --

7    MR. ROSE:  No.

8    THE COURT:  -- to the clerk's office and

9    ask for them --

10   MR. ROSE:  No, I couldn't --

11   THE COURT:  Listen to me.  You're

12   talking over me.

13   Have you gone to City Court to the

14   clerk's office and asked for them to look up

15   this information for you?

16   MR. ROSE:  No, ma'am.  And that is my

17   error.  I've been back and forth with

18   doctors, between my shoulder, my nose and my

19   heart.  I just -- every time I want to do it,

20   something always happens.

21   And I think I have just two more items

22   to discuss, Your Honor, and I'll be quick.

23   So also in this letter Mr. Resh states that,

24   for your review are pictures of the cats

25   involved in this incident and damage they

1   caused to the motor vessel parked under the

2   bank.   The photos of the vehicle with the

3   muddy cats prints are on my county-assigned

4   vehicle.   So apparently Mr. Resh, in addition

5   to this letter, whether he mailed it or

6   dropped it off, also provided pictures of

7   muddy cat prints on his county vehicle and

8   other pictures, and I just -- go ahead.

9       THE COURT:   You think you may not have

10   all the pictures?

11       MR. ROSE:   Yes, ma'am.   Because the

12   pictures that he shows in here, and I did get

13   two that he's alleged, but no pictures of the

14   muddy cat prints on his county vehicle, and

15   anything else.   I just wanted --

16       THE COURT:   Mr. Uselton, have you given

17   Mr. Rose all the pictures that you have that

18   pertain to these cats or this case?

19       MR. USELTON:   Yes, Your Honor.

20       THE COURT:   Okay.   So, Mr. Rose, the

21   City, as an officer of the Court,

22   Mr. Uselton, is stating that he does not have

23   anything in addition to what he's already

24   provided you.   I can't create something that

25   is not already there.

1    MR. ROSE:  I understand.

2    THE COURT:  So I have worked with

3  Mr. Uselton for many years and know him to be

4  upstanding.

5    MR. ROSE:  Oh, I don't think he is going

6  to lie to me.

7    THE COURT:  Yes.  Absolutely.  He would

8  never come in court and say something that is

9  not true.  So it appears that you have

10 everything, and I would note that there are

11 some photographs.  It looks like they were

12 perhaps marked as exhibits in the City Court

13 case.

14   MR. ROSE:  Yes, ma'am.

15   THE COURT:  And again, this case is de

16 novo, and so if there are any pictures or any

17 documents that either side wants to produce

18 or provide at our upcoming trial, they will

19 need to be fresh copies.  We can't take from

20 the old file to produce for this new trial.

21 So we need you to make sure that you have

22 copies of all of your documents ready to go,

23 too, okay.

24   MR. ROSE:  Yes, ma'am.  And then the

25 last item regarding this, actually I didn't

1    include it in this, I apologize, I thought I

2    had, was that the Gulfport Police officer who

3    met with the affiant on August 22nd and the

4    officer who had spoken to the affiant August

5    6th and who made the arrest of me on that day

6    of August 6th for the alleged crime of cat at

7    large were each wearing body cameras.

8         And I requested in previous motions to

9    the City of Gulfport to have all pictures,

10   audio, video related to the case going back

11   to my original motion back in early December

12   after I was arrested for cat at large, and I

13   have not been provided any audio or video

14   from each of these officers body cameras.  I

15   requested the body camera audio/video in

16   their entirety during each officer's visit on

17   those dates be provided to me, because they

18   may include exculpatory evidence.  And I know

19   the City Of Gulfport maintains body camera

20   footage for a lengthy period of time.

21         THE COURT:  I don't see a request for

22   body camera footage under your second motion.

23   Was it under your first motion?

24         MR. ROSE:  No.  Well, it would have

25   fallen under any audio or video that the City

29

1    has.  I came back and I didn't put it in my

2    second motion, but because I requested all

3    audio, video, pictures, everything, that

4    would have been a request of the original

5    motion for production of evidence that I

6    submitted to the City back in early December,

7    mid December of '22.

8         THE COURT:  Mr. Uselton, can you tell me

9    how long, if you know, does the City Of

10   Gulfport retain body camera footage?

11        MR. USELTON:  Judge, I am not sure of

12   the policies.  It depends on how it's

13   classified and if the officer just calls it a

14   report instead of an arrest, it's a different

15   amount of time.  Judge, I have some CDs in my

16   file that may be the body cam, and it could

17   have been a missed communication with his

18   request and did not specifically state body

19   cam.

20        The City certainly has nothing to hide.

21   I'll review these CDs.  If that's what it is

22   we'll certainly provide it to the defendant.

23   Again, Judge, it's open discovery and I'm

24   happy to provide him anything that's in my

25   file.

Natasha Perkins, CSR, Official Court Reporter

30

1     THE COURT: Mr. Uselton, in addition

2    reviewing the CDs that you have, would you

3    send an email or make a phone call to make an

4    inquiry to see if there are any still saved

5    under the server or the system that might

6    still pertain. I doubt that there are at

7    this point, but would you make that attempt?

8     MR. USELTON: Yes, Your Honor. And I

9    will look into that myself, as well as have

10   the Gulfport Police Department officer in

11   charge of the system do a search. He's a

12   little bit better than I am. I don't want

13   anything to slide through the cracks and not

14   be provided.

15    THE COURT: All right. Thank you. And,

16   Mr. Rose, I see that these motions were both

17   sent over to the court administrator. I

18   understand you are representing yourself in

19   this case, and so I want to be clear, if you

20   file anything with the Court, whether it's a

21   motion or a letter, you need to send a copy

22   to Mr. Uselton.

23    MR. ROSE: Yes, ma'am. And I apologize.

24    THE COURT: That's okay. That's okay.

25   Do you have his contact information? Do you

1    have his mailing address so that you can mail

2    him a copy if you file something else?

3         MR. ROSE:  I think Dawn, I don't know

4    her last name, was going to be the -- is she

5    going to be the --

6         THE COURT:  Dawn Stough, they're in the

7    same office.

8         MR. ROSE:  Okay.  I just didn't know

9    who's going to be prosecuting the case for

10   the City on this case.

11        MR. USELTON:  As long as it makes it to

12   my office, Judge, we'll figure that out.  I'm

13   not sure who's going to be trying the case,

14   to be honest.

15        MR. ROSE:  Well, it doesn't matter.

16        THE COURT:  It may change, but they're

17   both at the same place.  So if you mail

18   anything, you can mail it to the same

19   address.

20        MR. ROSE:  I do have one more thing,

21   Mr. Uselton has the CDs here which I was not

22   provided.  Is there a way that he could just

23   have them copied by somebody here?

24        THE COURT:  No.

25        MR. USELTON:  And, Judge, just to make

1    clear, I want to make sure that I do
2    everything that the Court wants me to do.  He
3    referenced the day that he was arrested, it
4    would have been an officer and him, am I
5    looking for that body cam footage, as well --
6        MR. ROSE:  Yes.
7        MR. USELTON:  -- or just the day the
8    individual, the complainant spoke to the
9    officer?  Because I would highly doubt that
10   any arrest interaction, because I'm sure he
11   was pretrial released and not taken into
12   custody on this charge, I highly doubt that
13   that would still be in the system, but I can
14   inquire about it if that is what the Court
15   would like me to do.
16       THE COURT:  Let's just check for both.
17   That's a good point and I'm glad you brought
18   that up.  We'll check for both.
19       MR. ROSE:  Yes.  Yes.  Thank you, Your
20   Honor, because the affiant did speak to the
21   officer before the officer called me over.
22       THE COURT:  All right.  So they're going
23   to check for both.  And then, Mr. Uselton, if
24   you can have a response to Mr. Rose.  Do you
25   have his email address, mailing address and

1    phone number?

2         MR. USELTON:  Judge, I'll make sure he

3    and I speak after we're finished with the

4    Court and can exchange all of that

5    information.

6         THE COURT:  If you could take a look at

7    that, I understand most attorneys have our

8    annual convention next week, which I'm not

9    sure, that might take up some of your time,

10   could you get back to him on that by Friday

11   the 28th.

12         MR. USELTON:  Judge, I can certainly get

13   back to him with whether or not it exists.  I

14   did see that he is asking for a continuance

15   based on the medical reasons.  The City would

16   have no objection to that.  But I'm not

17   sure -- we have someone who comes in to

18   actually burn the items to a disk, and how

19   often he's in and things of that nature kind

20   of dictate how fast I can get the CDs to him,

21   but I can certainly let him know probably by

22   this Friday whether they're still in

23   existence.

24         THE COURT:  Okay.  Well, let's do that.

25   At least identifying if they exist or not,

1    and then I would just urge that all discovery

2    needs to be wrapped up as soon as possible in

3    this case.

4         And, Mr. Rose, that leaves your motion

5    to continue.  It sounds like the City is not

6    opposing that motion.

7         MR. USELTON:  That's correct, Your

8    Honor.  Given the medical reasons stated

9    therein, the City would have no objection.

10        THE COURT:  Okay.  So we're currently

11   set for trial on August the 2nd.  Mr. Rose, I

12   did receive that motion with your attached

13   plan for shoulder surgery which states that

14   you will be in a sling for approximately

15   three weeks and full recovery is three to

16   four months.  We'll be back in Gulfport -- is

17   it November?  Once we move from August, I

18   believe if we're looking at November dates

19   that would give you time to recover.

20        MR. USELTON:  That's fine with the City,

21   Judge.

22        MR. ROSE:  Thank you, Dustin.

23        THE COURT:  I believe we could set it

24   for November the 7th or the 9th.  November 6

25   is a Monday, November 9th is a Thursday.

1    When do you have court, Mr. Uselton?

2         MR. USELTON:  Basically every day,

3    Judge, but we'll figure that out.  The 9th

4    would be better.  If I can help it, I like to

5    not come over here on Mondays.

6         THE COURT:  It is busy on Mondays.

7    Mr. Rose, November the 9th right here at 9:00

8    o'clock, does that sound good?

9         MR. ROSE:  Yes, ma'am.  That's it.

10   Thank you very much.

11        THE COURT:  All right.  Anything else we

12   need to take up this morning?

13        MR. USELTON:  Judge, just real briefly.

14   I did want to put on the record.  The

15   defendant, in his motion, seemed to

16   insinuate, he said contrary to the

17   Mississippi Rules of Criminal Procedure, he

18   was not provided with the affidavit, and the

19   City and me specifically took kind of offense

20   to that because it was a motion that was

21   heard and denied in the trial court, so any

22   insinuations that I was not living up to my

23   ethical obligations under the rules, I kind

24   of take offense to that and wanted to put it

25   in the record and just fully explain the

1  factual basis on why he was not provided what
2  he asked for down the road.
3      THE COURT:  Yes.  Thank you.
4      MR. ROSE:  And, Your Honor, I didn't
5  mean -- obviously, I'm not a great writer
6  like most lawyers, some lawyers anyway.  I
7  didn't mean that.  I was just trying to push
8  the point that I feel like I need to have
9  those documents, so I apologize for that,
10  Dustin.
11      THE COURT:  All right.  Mr. Uselton, do
12  you think that you would have the time to
13  prepare a proposed order denying the motion
14  for production of phone records, denying the
15  motion for other case or affidavit
16  information, that Mr. Rose needs to make that
17  inquiry first.
18      The motion for spoliation is moot at
19  this point.  The City has affirmed that they
20  have produced everything.  And the City will
21  make an inquiry into the content of the CDs
22  already in your possession, as well as make
23  attempts to find if there are any other body
24  camera videos that relate to either the
25  initial complaint call or arrest, and our new

1    trial date is November 9.

2        Thank you both for being on time and

3    being prepared.  You are excused at this

4    point, unless we have anything else we need

5    to discuss?

6        MR. ROSE:  I believe that is everything,

7    Your Honor.

8        THE COURT:  All right.  We'll be off the

9    record.

10        (Proceedings concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1         C E R T I F I C A T E

2    STATE OF MISSISSIPPI

3    COUNTY OF HARRISON

4         I, NATASHA W. PERKINS, CCR, and Notary Public,

5    duly commissioned for the County of Harrison, State of

6    Mississippi, do hereby certify:

7         That on the 11th day of July, 2023, there was held

8    before the Honorable Alison Baker, the foregoing

9    Proceedings, and that the preceding thirty-eight (38)

10   pages contain a full, true, and correct copy of my

11   stenotype notes, later reduced to typewritten form by

12   computer-aided transcription, of said Proceedings;

13        That I am not related to or in anywise associated

14   with any of the parties to this cause of action, or

15   their counsel, and that I am not financially interested

16   in the same;

17        IN WITNESS WHEREOF, I have hereunto set my hand,

18   this the 7th day of August, 2023.

19

20                    _____
                      NATASHA W. PERKINS
21                    Official Court Reporter

22

23

24

25

Natasha Perkins, CSR, Official Court Reporter